The First National Bank v. The Western Mortgage and Investment Company.

No. 125.

#### Description—Herd of Cattle—Increase.

A mortgage was executed upon " My herd of fifteen hundred cattle, located upon my ranch pasture in McCulloch County, Texas, each and all of such cattle being marked and branded with the following mark and brand, F+H, and consisting of bulls and breeding and grazing cattle of one year old and upwards." Subsequently the mortgagor executed another mortgage upon his entire herd. In a contest between the two mortgagees it appeared that at the date of the first mortgage there were in the herd 200 calves under one year old, and that at the trial the increase numbered about 1800 head.

*Held:* 1. The description in the first mortgage included the increase..................................................................... 638

2. The description did not include the calves under one year old, and they were subject to the second mortgage...................... 640

Error to Court of Civil Appeals for Third District, in an appeal from Travis County.

Justice Key did not sit in this case on appeal.

*J. L. Peeler*, for plaintiff in error.—Plaintiff in error contends: 1. That its chattel mortgage was superior to the mortgage of said company as to the 200 calves and 1800 head of increase, and was the first and only lien on them. In other words, the plaintiff in error contends that a mortgage given on live stock in this State does not cover the increase thereof, unless some reference is made to them. Winter v. Landphere, 42 Iowa, 471; Darling v. Wilson, 60 N. H., 59; Thorpe v. Cowles, 55 Iowa, 408; Boggs v. Stankey, 14 N. W. Rep., 392; Fowler v. Merrill, 11 How., 396; Jones on Chat. Mort., secs. 62, 150, 167; 2 Black. Com., 390; Kelly v. Ried, 57 Miss., 89; Stonebraker v. Ford, 81 Mo., 533; Willis v. Moore, 59 Texas, 635, and authorities cited.

2. Admitting, for argument's sake, that a mortgage would ordinarily cover increase without reference being made to it, yet we contend, in all seriousness, that the mortgage of said company did not cover the calves

or increase in this particular case, and that the words "one year old and upwards," contained in the descriptive portion of said mortgage, were a limitation upon the term "herd" as used therein.    Jones on Chat. Mort., sec. 62; Chapin v. Garretson, 52 N. W. Rep., 104; Conner & Co. v. Littlefield & Bro., 79 Texas, 77.

3.   A pre-existing debt is a sufficient consideration for a mortgage.   Mc-Keen v. Sultenfuss, 61 Texas, 325; Rice v. Soders, Posey's U. C., 615; Kranert v. Simon, 65 Ill., 344; Butler v. Houghwout, 42 Ill., 18; Mc-Maughlin v. Ward, 77 Ind., 383; Gilchrist v. Gough, 63 Ind., 576; Machette v. Wanless, 1 Col., 225; Smith v. Worman, 19 Ohio, 145; Paine v. Benton, 32 Wis., 491; Turner v. McFee, 61 Ala., 468; Steiner v. McCall, 61 Ala., 406; Cromelin v. McCauley, 67 Ala., 542; Turner v. Killian, 12 Neb., 580; Cooley v. Hobart, 8 Iowa, 358; Wright v. Bundy, 11 Ind., 398; Usina v. Wilder, 58 Ga., 178; Hewitt v. Powers, 84 Ind., 295; Louthian v. Miller, 85 Ind., 161; Jones on Chat. Mort., sec. 81; Boone on Mort., sec. 54.

*A. M. Jackson*, for defendant in error.—1.   The chattel mortgage of defendant in error, the mortgage company, was upon Ford's *herd* or *stock* of cattle in the F+H brand, situated on his ranch in McCulloch and Menard Counties, and the court below properly foreclosed said mortgage upon all of the cattle belonging to said *herd*.

2.   A mortgage upon a *herd* or stock of cattle attaches to and covers the natural increase of such stock or *herd*.   3 Laws. Rights, Rem. and Prac., sec. 1370; 4 Id., sec. 1759; Schoul. on Bail., sec. 176; Story on Bail., sec. 292; 1 Domat Civ. L., part 1, book 3, title 1, sec. 1, art. 7; 8 Gill & Johns., 39; 5 Yerg., 195; 9 B. Mon., 124; 46 Mich., 131; 64 Wis., 35; 67 Md., 573; Jones on Chat. Mort., secs. 149, 150.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by the plaintiff in error to recover of James Ford and J. L. Driskill upon certain promissory notes, and to foreclose a mortgage upon a certain herd of cattle, executed by Ford to secure their payment.   The Western Mortgage and Investment Company, Limited, was made also a party defendant.   The last named defendant pleaded, that it held a prior mortgage executed by Ford upon the entire herd in question, and prayed its foreclosure by decree for a sale of the cattle and for preference in payment from the proceeds of the mortgaged property.   It obtained a judgment and decree in accordance with the prayer in its answer, which was affirmed in the Court of Civil Appeals.

The mortgage of the defendant company was executed September 4, 1885, and described the mortgaged property as follows:   "My herd of 1500 cattle, located on my ranch pasture in McCulloch County, Texas, each and all of such cattle being marked and branded with the following

mark and brand, F+H, and consisting of bulls and breeding and grazing cattle of one year old and upwards.''

That of the plaintiff was executed January 3, 1887, and contains the following description of the cattle which was made subject to the lien: ''All cattle in the following brands, to-wit, F+H, estimated at 2000 head. Some of said cattle are now in my pasture in McCulloch and Menard Counties, Texas, and the remainder on the range in said counties and elsewhere in the State of Texas; together with the increase of said cattle.''

The latter mortgage was given for a pre-existing debt. It appears also from the agreed statement of the case made out for the purposes of the appeal, '' that on the 4th day of September, 1885, the date of the chattel mortgage to said company, the said Ford had on his ranch pasture in McCulloch County about 1500 head of cattle in the F+H brand, besides calves, and there were then about 200 head of calves under one year old.''

The writ of error presents two questions for our determination. It is contended on behalf of the plaintiff in error, first, that the mortgage of the defendant in error does not embrace the 200 calves which were in the herd at the time it was executed; and secondly, that it does not cover the increase of the cattle originally subject to the lien.

In reference to the second question, the Court of Civil Appeals say in their opinion:

'' We now reach the question whether the mortgage will cover the increase of the herd without a special mention to that effect. The following authorities lay down the rule, that between the parties to the instrument, the mortgage of personal property covers and includes its increase: Evans v. Meniken, 8 Gill & Johns., 43; Hughes v. Groves, 1 Littell (Ky.), 317; Meyes Bros. v. Cook, 85 Ala., 419; Cohorn v. Miers, 67 Md., 576; Dyer v. The State, 88 Ala., 229; Forman v. Proctor, 9 B. Mon., 124; Grundy v. Beteler, 6 Ill. App., 511; Pyatt v. Powell, 51 Fed. Rep., 553; 130 U. S., 78; Funk v. Paul, 64 Wis., 38; Kellog v. Lonley, 46 Mich, 133; Cobby on Chat. Mort., secs. 352–369; Story on Bail., sec. 272; Jones on Chat. Mort., secs. 149, 150; 3 Laws. on Rights and Rem., sec. 1370; 4 Laws. on Rights and Rem., sec. 1759.

'' In Edward v. Osman, 84 Texas, 659, in the foreclosure of a mortgage that did not cover the increase of the cattle, the court say: ' It is true the mortgage did not expressly include the increase of the stock of cattle in the brands mortgaged, but we are not prepared to assent to the proposition that this was necessary in order to extend the mortgage to the natural increase.' But the question is not decided, as the case is disposed of and the judgment of the trial court foreclosing the mortgage upon the increase is affirmed upon other grounds. But the decision could have rested upon this view of the law, and if not express authority upon the question, it is, to say the least, very persuasive.

"Some of the authorities cited apply to pledges, but we can see no reason in principle why the same rule of law should not apply to property mortgaged, although the mortgagor has not parted with possession. In this State the mortgagor retains the title and right to possession of the property encumbered, subject to the lien in favor of the mortgagee. By reason of this rule some of the cases cited as authority for our holding may not be entitled to much weight in support of our views, as in the main they seem to rest upon the common law rule, that the mortgagee becomes the owner of the thing mortgaged, and as an incident of such ownership is also entitled to the increase and the fruits arising from the subject mortgaged. But as between the parties to the mortgage, when the rights of an innocent third party have not intervened, we believe the mortgage of the dam covers its increase, and that the mortgage should extend not only to the thing described, but to all that shall arise or proceed from it. We have discussed this question from the standpoint as if a controversy between the parties to the mortgage, because the plaintiff in error, not being a subsequent mortgagee for value, stands in the same position as if the controversy was between Ford, the mortgagor, and the defendant in error. If the plaintiff in error had been a subsequent mortgagee for value without notice, we are not prepared to say that we would have laid down the rule with reference to the mortgage covering the increase as broadly as we have stated it; but, however, as this question is not before us, we leave it open."

In the conclusions thus announced we fully concur. We have nothing to add to what is said upon that question, and adopt so much of the opinion as our own.

But in the determination of the other question we do not concur.

If the intention had been to include the entire herd of cattle in the mortgage of September 4, 1885, this intention would have been fully expressed by describing it as "my herd of 1500 cattle in McCulloch County, Texas, the brand being F+H." A mention of the several classes of cattle comprising the herd would have added nothing to the description. It is therefore reasonable to conclude that the addition of words which described the property by the several classes of which the herd consisted, and which omitted one class, namely, those less than one year old, was intended by the parties to exclude the latter from the operation of the mortgage.

The rule, that the mention of one thing is the exclusion of another, applies in such cases, unless upon looking to the entire instrument we discover some language which shows a contrary intention. Broom's Legal Max., 654. But there is nothing except the general words, "my herd," which tends at all to show that it was the purpose to embrace the calves. The other descriptive clauses lead to a contrary conclusion.

When the construction of a contract is doubtful, it is competent to

show by parol evidence of what the subject matter of the contract consists, in order to throw light upon the question. We see from the statement as to Ford's testimony, that at the time the mortgage was executed, there were in the herd about 1500 cattle, exclusive of the calves. This corresponds with the number of cattle comprised in the herd as given in the description in the mortgage.

"Each and all of such cattle being marked and branded with the following mark and brand," etc., are words which strongly indicate that cattle not marked and branded were intended to be excepted; and the clear inference from Ford's testimony, as shown by the agreed statement, is that the calves were unmarked and unbranded. No good reason suggests itself why the calves should have been omitted, when all the remainder of the herd were included; but this does not justify us in including them contrary to the intention of the parties, deduced from the language employed in the instrument, when construed either by itself or in the light of the parol testimony as to the classes of the cattle as they existed at the time the mortgage was executed.

The description does not read, "All of my herd," etc., but "My herd, * * * each and all of such cattle marked and branded, * * * and consisting of bulls and breeding and grazing cattle of one year old and upwards." It clearly admits of the same construction as if it read, "that part of my herd of cattle which consists of bulls and breeding and grazing cattle of one year old and upward, which are marked and branded." The number of the cattle given in the mortgage, there being that number in the herd, exclusive of calves, the declaration that each and all of the mortgaged animals are marked and branded, and mention of their ages as being one year old and upwards, all tend very strongly to support this conclusion.

For the reasons given, we think there was error in holding that the mortgage covered the calves and the increase of the calves which constituted a part of the herd at the time it was executed. The judgment must be reversed, and because the record does not disclose how many of such calves and of their increase were in the herd at the time of the execution of the mortgage, the cause must be remanded. If such calves and their increase can be distinguished, the case, it would seem, ought to admit of an easy determination upon another trial. But if they have been marked and branded as the parent stock, and retained in the herd, so that they have become confused with it, and are undistinguished from the cattle subject to the mortgage, other questions may arise which we will not undertake to determine in advance. The judgments of the District Court and the Court of Civil Appeals are reversed and the cause remanded.

*Reversed and remanded.*

Delivered April 26, 1894.