## TAYLOR et ux. v. AMERICAN TRUST & SAVINGS BANK OF EL PASO et al.
### (No. 1698.)

(Court of Civil Appeals of Texas. El Paso. Oct. 22, 1924.)

1. **Courts ⊕═206(9)—Jurisdiction of Court of Civil Appeals is appellate only.**

Under Rev. St. art. 1592, jurisdiction of the Court of Civil Appeals is appellate, with no original jurisdiction, except to issue mandamus and other writs necessary to enforce appellate jurisdiction.

2. **Appeal and error ⊕═456—Court of Civil Appeals held unauthorized to issue temporary injunction pending appeal.**

Where lower court refused temporary injunction, it is not permissible for Court of Civil Appeals to issue temporary injunction or restraining order pending disposition of appeal.

3. **Execution ⊕═75—Issuance of writ to sheriff two days prior to agreed time held minor irregularity.**

In view of fact that time had arrived when writ could rightfully have issued under contract to stay execution, fact that writ was issued to sheriff two days prior to time provided by contract was minor irregularity.

4. **Execution ⊕═75—Contract staying execution held not to postpone foreclosure on stock retained by defendant in execution for reasonable time after named date.**

Contract to stay execution retaining defendant in execution in possession *held* not to provide that enforcement of foreclosure on stock which defendant was permitted to retain was postponed for reasonable time after named date.

5. **Appeal and error ⊕═954(2)—Discretion of trial judge in refusing injunction not disturbed.**

Where there was issue of fact as to whether there was attempt to enforce judgment for

amount greater than balance alleged to be rightfully due, and trial judge in discretion refused restraining order, his ruling thereon will not be set aside.

**6. Execution ☞172(2)—Incumbent on defendant in execution to tender amount due before asking that execution be enjoined.**

Where it was admitted there is a balance due on judgment, and all property levied on was subject to seizure and sale in satisfaction of balance, defendants in execution must tender amount due before they can' ask that sale of property be enjoined.

**7. Execution ☞172(4)—Showing held insufficient to entitle defendants in execution to relief by injunction from garnishment proceedings.**

Where, in suit to enjoin execution, plaintiffs alleged service of writ of garnishment and answer showed indebtedness, but that they had not been advised whether garnishment had proceeded to final judgment or of its disposition, showing was insufficient to authorize relief by injunction.

**8. Judgment ☞839—Contention that assignment of judgment was invalid held without merit.**

Contention that ' assignment of judgment was invalid for misdescription of brands of cattle contained therein *held* to be without merit.

**9. Execution ☞171(1)—Seizure and sale of increase of cattle, held unauthorized, and would be restrained. ·**

Where, under contract to stay execution, defendants in execution were permitted to retain 600 top cows, seizure and sale of increase thereof *held* unauthorized, and would be restrained.

**10. Execution ☞84—Order of sale must follow judgment.**

Order of sale must conform to and follow judgment on which it is based.

Appeal from District Court, Culberson County; W. D. Howe, Judge.

Suit by D. Taylor and wife against the American Trust & Savings Bank of El Paso and others to enjoin levy under orders of sale. From an order refusing a temporary injunction, plaintiffs appeal. Reversed and rendered.

J. L. Dodson, of Van Horn, and J. B. Howard, of Pecos, for appellants.

Croom, Goldstein & Croom, of El Paso, for appellees.

HIGGINS, J. Appellants Taylor and wife filed this suit against the appellees, American Trust & Savings Bank of El Paso, Tex., the Liberty Trust & Savings Bank of Chicago, the El Paso Cattle Loan Company, and C. N. Cummings and Harry Moore, the sheriffs of Culberson and Hudspeth counties, respectively. A statement of the material allegations of the petition is as follows:

On October 2, 1923, the El Paso Cattle Loan Company, hereinafter referred to as the Loan Company, recovered an agreed judgment in the district court of Culberson county against the plaintiffs upon certain notes and foreclosing mortgages upon real and personal property, the judgment being for the sum of $76,399.80, with interest. The personalty thus foreclosed upon is described in the judgment as follows:

"Three thousand (3,000) or more head of cattle and horses described as follows: Fifty (50) or more head of steers, 2 years old and up; two hundred (200) or more 1-year old steers; twelve hundred (1,200) or more cows; two hundred fifty (250) or more 2-year old heifers; three hundred twenty (320) or more 1-year old heifers; ninety (90) or more bulls; six hundred fifty (650) or more calves; two hundred (200) or more stock horses; forty (40) or more work and saddle horses.

"The above described cattle and. horses are all branded and marked in one or more of the following brands and earmarks: ⊣ on left jaw; 7 on left side ⃝ earmarked or in any position on any part of the animal. The above described cattle and horses are all located on ranches in Culberson and Hudspeth counties, Texas."

Contemporaneously with the rendition of such judgment, the plaintiff and the Loan Company entered into a written contract in which it was agreed (omitting immaterial provisions)—"between the plaintiff and defendant, D. Taylor, that execution of said judgment and order of sale on the same will be stayed on the following terms and conditions, only, to wit: That the said D. Taylor will remain in possession of said ranch and cattle, giving the same his undivided time, effort, and ·attention, in connection with any representative or inspector of the El Paso Cattle Loan Company who will have a right at all times to remain upon said ranch and look after the said cattle and ranch in the interest of the El Paso Cattle Loan Company; that said cattle and the stock horses will be gathered and sold at the best ˙price obtainable (subject to the approval of the El Paso Cattle Loan Company) on or before the 1st day of January, 1924, the El Paso Cattle Loan Company agreeing to assist in obtaining an advantageous sale for the same except that the said D. Taylor, shall have a right to retain 600 top cows, 30 bulls and 30˙ saddle ·horses of his own selection, after sales aggregating $30,000 have been made. Subject to the above, it is contemplated that the sale of said cattle will' be for the mutual advantage of all and carried through in an orderly manner and sold at such times and under such conditions as will derive the maximum amount. All proceeds of said sales will be payable to the El Paso Cattle Loan Company, to be applied on said judgment, and the balance remaining. unpaid after the

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

sale of all such cattle and horses, except those excepted herein, shall be due and payable within twelve months from this date and shall bear interest as provided for in said judgment. * * * Until said debt and judgment is entirely liquidated the same shall stand secured by said chattel mortgage lien, deed of trust lien, and judgment lien as therein provided except as to the parcels of property sold under this contract and the proceeds derived therefrom applied thereon. * * * The El Paso Cattle Loan Company agrees to advance to the said D. Taylor, as his needs may require, sufficient expense money to attend to the running, gathering, selling, and shipping of said cattle from now until the 1st day of January, 1924, not exceeding the total of $1,000. Any amount so advanced as herein provided for said expenses shall be deducted from said sales and otherwise stand secured by the said liens that now secure said debt and judgment."

In accordance with the provisions of such contract the plaintiffs paid to the Loan Company more than $30,000 prior to the 1st day of January, 1924, and shortly thereafter paid a further sum of approximately $36,000, and plaintiffs cut out and retained 600 top cows, 30 bulls, and 30 saddle horses, which cows and bulls they still have, and 5 head of saddle horses; 25 head of the saddle horses having been sold and the proceeds paid to the Loan Company. The Loan Company, on September 29, 1924, at the instance of the defendant banks, procured the issuance of an order of sale based upon said judgment, and the same was delivered to the sheriff of Culberson county and on October 3, 1924, said defendant banks procured the issuance of another order of sale which was delivered to the sheriff of Hudspeth county, in which orders of sale the recovery of such judgment is recited, and the payment thereon of the sum of $66,819.40 and reciting a balance due of $19,224.95, and the sheriffs were directed to seize and sell the property described in the orders of sale in satisfaction of said balance due. The order of sale directed to the sheriff of Culberson county is attached as an exhibit to the petition and the property which the sheriff is therein directed to seize and sell follows the description contained in the judgment of foreclosure as quoted above.

The indorsement of the sheriff of Culberson county upon the writ directed to him shows that he levied the same "upon the following described personal property, described in the within order of sale, on the 29th day of September, A. D. 1924, at 11 o'clock a. m. being the property of defendants, situated and running upon the range of D. Taylor, in Culberson county, Tex.: About 50 head bulls; about 800 head cows and heifers; about 600 head calves; about 50 head stock horses; about 15 head work and saddle horses; about 20 head steers—all branded in one or more of the following brands: ⊣ left jaw; ⟨7⟩ left side on cattle ⟨7⟩ left thigh on horses earmarked ⟨symbol⟩ calves unbranded but following cows."

Such property has been advertised for sale by the sheriff of Culberson county on October 16, 1924, in satisfaction of said balance of $19,224.95. Said judgment was assigned by the Loan Company to the defendant banks. The sheriff of Hudspeth county is threatening to round up, levy upon, and advertise for sale, all of the property in Hudspeth county described in the order of sale, delivered to him. The petition avers that there is only $11,922.97 balance due upon the judgment, instead of $19,224.95, but the defendant banks are endeavoring to add to the judgment about $4,000 which has been advanced by the Loan Company, or the assignees to plaintiffs for the purpose of running the ranch and caring for the live stock thereon and there is not "a scratch of a pen" against the plaintiffs to show such indebtedness, except the $1,000 advance provided for in the above mentioned agreement, and that such $4,000 is no part of the judgment.

On June 21, 1924, the plaintiff D. Taylor was served with a writ of garnishment in a suit wherein the American Trust & Savings Bank is plaintiff, and W. D. Connell is defendant, and said Connell by cross-action was claiming an indebtedness against said bank in the sum of $2,225 and D. Taylor answered such writ on July 3, 1924, showing how he was indebted to the Loan Company, and the plaintiffs have not been advised whether the garnishment has proceeded to final judgment or what disposition made of the same.

The plaintiff further avers that the sheriff of Culberson county has exceeded the authority vested in him by the order of sale in his hands in that he is directed to seize and sell 650 calves or more, and these were calves at the time of the rendition of the judgment, but are yearlings at this time, and the sheriff has levied upon and advertised for sale about 600 head of calves which the order of sale does not call for. That the calves described in the judgment and order of sale all, or practically all, have been sold and the proceeds paid to the Loan Company in accordance with the agreement. The 600 calves which the sheriff has levied upon are calves of the 600 cows retained by the plaintiffs under the agreement, and are not mentioned in the judgment, said 600 calves having come since the rendition of the judgment and were not in existence at the date of the judgment; that many of said 600 calves have been weaned, no longer follow their mothers, and have become mixed and mingled with other cattle, and cannot now be identified, and the sheriff of Hudspeth county is threatening to levy upon and sell such calves situated in Hudspeth county;

that on August 5, 1924, there was filed and recorded in Culberson county an assignment from the Loan Company to the defendant banks dated July 31, 1924, undertaking to assign said judgment, reciting that the cattle and horses are marked and branded as follows: "-|- on left jaw; 7 on the left side; earmarked ⊘⊘, or in any position on any part of the animal."

Plaintiffs aver:

"That in view of the contract made and entered into with them, and in such contract it was agreed and understood that upon their making a substantial payment upon said indebtedness that they should have sufficient time to work out their said indebtedness and let said excepted cattle grow out and pay them out of their said indebtedness, leaving them a small nucleus, but that in violation of said contract, and with full knowledge of the damage caused them, and with the full purpose and intent of forcing them into bankruptcy and forcing these plaintiffs to turn over all of their assets, the said defendants American Trust & Savings Bank and Liberty Trust & Savings Bank, have caused said defendant clerk to issue said orders of sale, knowing full well that the same were illegal, and the same was done for the purpose of seeking the said 600 head of excepted cattle, and the unsold portion of saddle and stock horses, and the said excepted 30 bulls, and the increase of said cows, to these plaintiffs' damage in the sum of $25,000, for which amount these plaintiffs here and now sue, and by reason of the above and foregoing pleading these plaintiffs say they have been damaged in the said full amount of $25,000 actual damages."

Further allegations are made with respect to irreparable damage which will be suffered as well as some other allegations which need not be noticed as they are not material upon the issues presented.

A temporary writ of injunction was prayed for enjoining the defendants from seizing and selling any of the plaintiffs' said stock under said orders of sale which was submitted to Hon. W. D. Howe, the district judge of Culberson county, and heard upon the petition and sworn answer. On October 9, 1924, Judge Howe refused to grant the temporary injunction, and this appeal is prosecuted from his order of refusal.

Upon the filing of the transcript in this court it was accompanied by a motion made by the appellants to advance, and that, pending the hearing in this court, a temporary restraining order be issued by this court restraining the sheriffs of Culberson and Hudspeth counties from executing the orders of sale until this court could pass upon the merits of the appeal. The motion to advance was granted and the appeal heard and disposed of in this court on the day preceding the date of sale. In view of the fact that recently applications have been made to this court for the issuance of temporary restraining orders such as was asked for in this case, it is deemed advisable to indicate our views upon the authority of this court to issue the same.

[1] The jurisdiction of this court is appellate, with no original jurisdiction, except "to issue writs of mandamus and all other writs necessary to enforce" its appellate jurisdiction. Article 1592, R. S.

[2] The judge of the lower court refused the temporary injunction and in our opinion it is inadmissible for this court to issue a temporary injunction or restraining order against the appellees pending the disposition by it of this appeal. In our opinion, so to do would be the exercise of original jurisdiction. It is in effect asking this court to do what the trial judge refused to do. It is not necessary to the protection of the appellate jurisdiction of this court over the order of the trial judge that the plaintiffs be protected from damage pending the disposition of the appeal.

This conclusion, it seems to us, necessarily follows from the opinion and ruling of Chief Justice Roberts in City of Laredo v. Martin, 52 Tex. 548, and is in harmony with the rulings of the Fort Worth, Amarillo, and San Antonio Courts of Civil Appeals in Tipton v. Ry. P. C. Inv. Ass'n, 170 S. W. 113; Texas, etc., v. City of Vernon, 254 S. W. 503; and Boynton v. Brown, 163 S. W. 599; also with ruling of the Galveston court in Ellis v. Harrison, 24 Tex. Civ. App. 13, 56 S. W. 592, 57 S. W. 984, though that court seems later to have adopted a contrary view. See Hubbart v. Bank, 55 Tex. Civ. App. 504, 119 S. W. 711, and Gibbons v. Ross (Tex. Civ. App.) 167 S. W. 18. In further support of our conclusion see Waters-Pierce, etc., v. State, 107 Tex. 1, 106 S. W. 326.

For the reason indicated, the motion for a temporary restraining order by this court is overruled.

In the consideration of the merits of the appeal the time was very limited. The case was not briefed though able oral argument was submitted by counsel upon both sides.

[3] No point was made in the argument upon the issuance of the writ to the sheriff of Culberson county two days prior to the time provided in the contract between the parties, nor do we deem it of controlling or practical importance in view of the fact that the time had arrived when it could rightfully issue. High on Injunctions (3d Ed.) § 177. Under the circumstances, it was a minor irregularity.

[4] We do not agree with the contention of appellants that, by their compliance with the terms of the contract, the enforcement of the foreclosure upon the stock which they were permitted to retain was postponed for a reasonable time after October 1, 1924. It is manifest that there was no intention of releasing any of the property from the foreclosure, and, considering the contract as a whole, we are of the opinion that for any

balance remaining unpaid on October 1, 1924, an order of sale would rightfully issue for the seizure and sale of all that was foreclosed upon.

[5] Upon the allegations of the petition it appears that there is an attempt to enforce the judgment for an amount greater than the balance rightfully due and there are decisions holding that in such cases an injunction will issue restraining the collection of the excess. Williams v. Bradbury, 9 Tex. 487; Miles v. Davis, 36 Tex. 690; Harrison, etc., v. Templeton, 82 Tex. 443, 18 S. W. 601; see, also, 15 R. C. L. 759; note 30 L. R. A. 563.

However, the sworn answer raises an issue of fact upon this phase of the case. The trial judge, in the exercise of the discretion vested in him, refused the writ, and in the state of the pleadings this court will not set aside his ruling upon that phase of the case.

[6] Furthermore, admittedly, there was a balance due upon the judgment of about $11,000. All the property levied upon was subject to seizure and sale in satisfaction of this balance, and upon this state of facts it was incumbent upon the plaintiffs to tender the amount due before they could rightfully ask that the sale of the property be enjoined. Smith v. Smith, 75 Tex. 410, 12 S. W 678; High on Injunctions (3d Ed.) §§ 130 and 138. No tender was made.

[7] The allegations respecting the garnishment proceedings afford no ground for the issuance of the writ. The principal defendant in the garnishment is the American Trust & Savings Bank. The petition shows that the writ was served and answered prior to the assignment to the defendant banks; that the answer showed an indebtedness to the Loan Company. There is nothing to show that Taylor has not been discharged upon this answer. In order to entitle appellants to any relief in this connection it was incumbent upon them at least to show that the garnishment proceeding was still pending. The petition shows that plaintiffs do not know what disposition has been made of it and this is insufficient.

[8] There is no merit in the objection made to the validity of the assignment because of a misdescription of brands contained in the same. It is not shown that the judgment was not otherwise sufficiently described. It appears to be an immaterial description of the judgment in part. Furthermore, if the assignment is ineffective, the Loan Company has the right to enforce the judgment.

[9] What has been said disposes of all contentions made by appellants except as to the 600 calves levied upon, which have come since the rendition of the judgment. Appellees call attention to the rule that a chattel mortgage upon animals covers the increase thereof, without special provision to that effect. Bank v. Mortgage Co., 86 Tex. 636, 26 S. W. 488. They insist that it should likewise be held that the foreclosure attaches to the subsequent increase and the sale thereof authorized. We do not undertake to determine whether or not appellees have a lien upon such increase which may hereafter be established and foreclosed. That question it is unnecessary to determine, and we express no opinion with respect thereto. But we are of the opinion that the seizure and sale of this increase under this judgment is not permissible, and that the rule respecting mortgages has no application in the determination of the question.

[10] An order of sale must conform to and follow the judgment upon which it is based. The clerk is without authority to issue an order directing the sale of any property which the judgment upon its face does not embrace. In the execution of the order, the sheriff or constable acts in a ministerial capacity. He is wholly without authority to seize any property which the writ upon its face does not authorize him to seize. The calves which came since the rendition of the judgment are not the animals described in the judgment, nor in the order of sale, and there was no authority for their seizure. For this reason we are of the opinion the sale thereof should have been enjoined.

The order of the trial judge is reversed and it is ordered that a temporary writ of injunction issue as prayed for enjoining the sale of said 600 head of calves upon the plaintiffs giving a bond in the sum of $2,500, with two or more good and sufficient sureties in the manner and form prescribed by law. In all other respects the writ was properly refused.

Reversed and rendered as indicated.